UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:12-cv-20626-SEITZ/SIMONTON

SUZUKI MOTOR CORPORATION and )
AMERICAN SUZUKI MOTOR )
CORPORATION, )
)
                 Plaintiffs, )
)
vs. )
)
JIUJIANG HISON MOTOR BOAT )
MANUFACTURING CO., LTD., )
)
                 Defendant. )
                                  )

## CONSENT ORDER GRANTING MOTION
## FOR ISSUANCE OF A PRELIMINARY INJUNCTION

This matter is before the court on Plaintiffs' Motion for Preliminary Injunction. For the reasons discussed below, including the consent of the Defendant, Plaintiffs' Motion for a Preliminary Injunction is **GRANTED**.

## BACKGROUND

This is a trademark infringement action, pursuant to the Lanham Act and related trademark laws, arising out of alleged infringement by Defendant, Jiujiang Hison Motor Boat Manufacturing Co., Ltd ("Hison"), of Plaintiffs, Suzuki Motor Corporation ("SMC") and American Suzuki Motor Corporation's ("ASMC") (collectively, "Plaintiffs"), trademark, SUZUKI. Plaintiffs have moved for a preliminary injunction to enjoin what they contend are Hison's false suggestions to the consuming public: (a) that it has an affiliation with SMC or ASMC and (b) that it has the authority to advertise, promote, and sell products containing genuine Suzuki-brand engines. Plaintiffs have provided

evidence, in the form of declarations of Norio Yamada, Larry Vandiver, and Michael Mills, that Hison is using Plaintiffs' trademark in connection with an engine not authorized by SMC or ASMC to be used in the marine environment, that Hison has been including such engine in Hison's personal watercraft and jet boats, and that these personal watercraft and jet boats were exhibited at the 2012 Miami Boat Show that was taking place at the time Plaintiffs filed their motion for a preliminary injunction.

In the Eleventh Circuit, a party seeking preliminary injunctive relief must show that: (1) there is a substantial likelihood that plaintiff may prevail on the merits; (2) there is a substantial threat that plaintiff will suffer irreparable injury if interlocutory injunctive relief is not granted; (3) the threatened injury to plaintiff outweighs any threatened harm an injunction may do to defendant, and (4) the grant of the injunctive relief will not disserve the public interest. See United States v. DBB, Inc., 180 F.3d 1277, 1284 (11th Cir. 1999); McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998) (citing All Care Nursing Servs., Inc. v. Bethesda Memorial Hosp., Inc., 887 F.2d 1535, 1537 (11th Cir. 1989)). In this case, to preserve the status quo and based upon the consent of Defendant, the Court grants the motion for a preliminary injunction based upon the following findings of fact and conclusions of law:

### A. Plaintiffs Have Established a Substantial Likelihood of Success on the Merits

Plaintiffs have shown that the SUZUKI Trademark is owned by SMC, and SMC has registered various forms and uses of the SUZUKI Trademark in the United States. SMC Dec ¶9 (SMC DEC refers to the Declaration of Larry Vandiver). As shown by the federal trademark registrations attached to the accompanying SMC Declaration, all of the SUZUKI Registrations are owned by SMC and several of the registrations have

2

become incontestable under 15 U.S.C. §§ 1058 and 1065. Incontestability firmly establishes the validity of those trademarks and SMC's exclusive rights in them. See Ocean Bio-Chem, Inc. v. Turner Network Television, Inc., 741 F. Supp. 1546, 1554 (S.D. Fla. 1990) (explaining that "[i]ncontestable status provides conclusive evidence of the registrant's exclusive right to use the registered mark, subject to §§ 15 and 33(b) of the Lanham Act").

In addition, SMC, on a worldwide basis, and ASMC, in the United States through its licensed rights from SMC, have been using designations that include the SUZUKI Trademark to promote, advertise, and sell their products for decades. SMC was first incorporated in 1920 under the name "Suzuki Loom Manufacturing Co." and has been providing various products since that time, including many products that are the subject of the SUZUKI Registrations. SMC Dec ¶¶4 & 6. The SUZUKI Trademark has been used by SMC to advertise, promote, and sell its products in the United States, either directly or through its U.S. licensee, ASMC and its sublicensees. SMC Dec ¶6. As such, Plaintiffs have shown that SMC and ASMC, through its license, own the exclusive rights to the SUZUKI Trademark.

Moreover, neither SMC nor ASMC has authorized Hison to use the SUZUKI Trademark. As set forth in the declarations on file, the SUZUKI Trademark is not used, licensed, or authorized for use for engine sales into the U.S. market or for use with any personal watercraft or jet boats of the type that Hison has been promoting. SMC Dec ¶¶12-18; ASMC Dec ¶¶12-15 (ASMC Dec refers to the Declaration of Norio Yamada). In particular, the SUZUKI Trademark has not been licensed for use in any inboard

watercraft environment, including personal watercraft or any type of boat. SMC Dec ¶¶16-18; ASMC Dec ¶¶13-15.

Finally, the Plaintiffs have made a sufficient showing that Hison's use of the SUZUKI Trademark will likely cause confusion, mistake, or deception as to the source, affiliation, or sponsorship of Hison's personal watercraft and jet boats. The Eleventh Circuit uses a seven-factor test in determining likelihood of confusion. These factors, as outlined in Lipscher v. LRP Publ'ns, Inc., 266 F.3d 1305, 1313 (11th Cir. 2001), include: (1) the type or strength of the mark; (2) the similarity of marks; (3) the similarity of the goods; (4) similarity of the sales methods; (5) the similarity of advertising media; (6) defendants' intent; and (7) any evidence of actual confusion. These "key factors" must be weighed to determine whether a likelihood of confusion exists. John H. Harland Co. v. Clarke Checks, Inc., 711 F.2d 966, 979-80 (11th Cir. 1983). As indicated below, the Court finds that Suzuki is likely to succeed in establishing it trademark infringement claims.

**(1)Type (Strength) of the Mark.** The SUZUKI Trademark is a strong mark, and this increases Suzuki's chances of prevailing on the merits. For purposes of strength, trademarks are generally classified into the following categories of "increasing distinctiveness [or strength]: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful." Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992). Fanciful, arbitrary and suggestive marks are the strongest and are deemed inherently distinctive and entitled to protection. Id. Descriptive marks may be protected if they acquire distinctiveness but generic marks cannot be registered. Id. at 768-69. The term "Suzuki" is not descriptive or generic for any product and, thus, the SUZUKI Trademark

4

is a strong, arbitrary and fanciful mark, which is entitled to the protection of the trademark laws.

The SUZUKI Trademark also has acquired secondary meaning and is a strong mark for that reason as well. In the three-year period of 2008 to 2010 alone, SMC spent over $1.5 billion in advertising, promoting, and marketing products under the Suzuki name or SUZUKI Trademark. SMC Dec ¶8. ASMC spent over $430 million during that same period to advertise, promote, and market products to the U.S. market under the Suzuki brand. ASMC Dec ¶8. Such exhaustive expenditures of time, labor, skill, and expense in developing, advertising, and promoting the SUZUKI Trademark have resulted in the SUZUKI Trademark enjoying widespread recognition and prominence in the minds of consumers. See Clayton v. Howard Johnson Franchise Sys., Inc., 730 F. Supp. 1553, 1559 (M.D. Fla. 1988) (finding that "[d]ue to extensive advertising and long use, 'Howard Johnson's' must be considered a strong mark"). Therefore, the SUZUKI Trademark is strong.

**(2) Similarity of the Marks.** Likelihood of confusion is greater when an infringer uses the exact trademark. Turner Greenberg Assocs. v. C & C Imps., 320 F. Supp. 2d 1317, 1332 (S.D. Fla. 2004). Here, Hison has been using the term "Suzuki," which is identical to the SUZUKI Trademark and to a portion of all of the SUZUKI Registered Trademarks.

**(3) Similarity of the Goods.** "The greater the similarity between the products and services, the greater the likelihood of confusion." John H. Harland Co., 711 F.2d at 976; see Turner Greenburg Assocs., 320 F. Supp. 2d at 1332. While SMC and ASMC do not sell personal watercraft or boats, per se, under the SUZUKI Trademark, the

products provided by SMC and ASMC are similar to Hison's infringing products. For example, the SUZUKI Registrations cover various types of vehicles and vehicle parts, including motorcycles, ATVs, motorized vehicles such as automobiles, trucks, vans, sport utility vehicles, cross-over vehicles, and parts thereof. SMC Dec ¶9. SMC has used the SUZUKI Trademark to promote and sell all of these products as well as outboard marine engines, and engines for snowmobiles. SMC ¶¶7 & 14. Moreover, ASMC uses the SUZUKI Trademark to promote and sell automobiles, motorcycles, ATVs and boat motors in the United Sates. ASMC ¶¶7 & 15.

Consumers likely would expect that a company that sells *outboard* boat motors, vehicles such as cars, trucks, and ATVs, and engines for snowmobiles to also sell personal watercraft, jet boats, and *inboard* engines for those vehicles. Hison has advertised that its products contain a genuine Suzuki engine. SMC sells engines into the United States, albeit for snowmobiles only. SMC Dec ¶14. Thus, the products Hison advertises, promotes and sells are similar to Plaintiffs' products.

**(4)Similarity of Sales Methods and (5) Advertising Method.** A high degree of similarity between sales methods and use of the same advertising media increases the likelihood of confusion. See Turner Greenburg Assocs., 320 F. Supp. 2d at 1332. Here, SMC, ASMC, and Hison all promote and advertise their products using at least one of the same marketing channels, namely the Internet. SMC advertises its products at www.globalsuzuki.com; ASMC advertises its products at www.suzuki.com; and Hison advertises its products at www.hisonjetski.com. SMC Dec ¶22; ASMC Dec ¶20; Mills Dec ¶12. As explained in paragraph 12 of the Mills Declaration, Hison has employed the SUZUKI Trademark at several pages of its website and the website depicted an

6

engine with the SUZUKI Trademark affixed to the engine itself. Mills Dec ¶¶12(e), 12(h), 12(k). Moreover, both ASMC and Hison promoted their products at the 2012 Miami Boat Show. ASMC Dec ¶19; Mills Dec ¶¶19 & 29.

(6) **Defendant's Intent.** When an alleged infringer adopts a mark "with the intent of obtaining benefit from the plaintiff's business reputation, 'this fact alone may be sufficient to justify the inference that there is confusing similarity.'" Turner Greenberg Assocs., 320 F. Supp. 2d at 1333 (citing Carnival Corp. v. Seaescape Casino Cruises, Inc., 74 F. Supp. 2d 1261, 1268 (S.D. Fla. 1999)). Hison's advertising material has contained references to the "Suzuki" engine, and Hison has posted on its website a photograph of an engine with the SUZUKI Trademark. Mills Dec ¶12. Moreover, during the 2012 Miami Boat Show, Hison's representatives told attendees that Hison's products utilized a "Suzuki" engine. Mills Dec ¶¶38-39. All of these actions were taken at a time when Hison did not have authorization to use the SUZUKI Trademark to market, advertise, or sell the Hison products.

(7) **Evidence of Actual Confusion.** Actual confusion is unnecessary to establish infringement because the test is only a likelihood of confusion. See Ferrellgas Ptnrs., L.P. v. Barrow, 143 Fed. Appx., 180, 191 (11th Cir. 2005) (directing the district court to issue a preliminary injunction despite the lack of any actual confusion evidence and citing Montgomery v. Noga, 168 F.3d 1282, 1302 (11th Cir. 1999) for the proposition that "actual confusion is not required to prove likelihood of confusion"). It is reasonable to infer that actual confusion may exist in the marketplace based upon the evidence showing that Hison has advertised, offered to sell, and sold products under the SUZUKI Trademark that SMC and ASMC use on similar products.

Accordingly, six of the seven likelihood of confusion factors weigh in Plaintiffs' favor and the seventh – actual confusion – also may have occurred. Therefore, Plaintiffs have shown a strong likelihood of prevailing substantively on the merits on both the federal trademark infringement under Section 32(a) and the common law trademark infringement claim under Section 43(a).

### B. Irreparable Harm to Plaintiffs Favors Injunction

As courts have recognized, "established case law . . . holds that, in cases involving copyright or trademark infringement, a plaintiff is not held to the usual requirement of showing irreparable injury if a prima facie case of infringement is made out." Universal City Studios. Inc. v. Casey & Casey, Inc., 622 F. Supp. 201, 204 (S.D. Fla. 1985). As the Eleventh Circuit has stated: "[A] sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of ... [a] substantial threat of irreparable harm." Ferrellgas Ptnrs., 143 Fed. Appx. at 191 (citing McDonald's Corp, 147 F.3d at 1310). A likelihood of confusion exists here, because Hison has engaged in activities involving designations indistinguishable from the SUZUKI Trademark and, thus, a substantial threat of irreparable harm exists.

In the context of the products that Hison is distributing using the SUZUKI Trademark, the propensity for irreparable harm to SUZUKI exists. Based on the declarations provided, the Court finds that the engines made and licensed under the SUZUKI Trademark are not designed for the inboard watercraft market. SMC Dec ¶18. If Hison sells Hison products which use engines under the SUZUKI Trademark, SMC's and ASMC's reputation as well as their apparent products liability exposure could be

greatly harmed, and customers and end-users would likely confuse unauthorized products with genuine products of SMC and ASMC. Otherwise, irreparable harm to both Plaintiffs is likely to occur, with the Plaintiffs losing business, goodwill, and potential customers.

### C. Harm to Defendant, if Any, Outweighed by Harm to Plaintiffs

Third, any harm that would ensue to Hison from the entering of this preliminary injunction is outweighed by the harm Plaintiffs are suffering from as a result of Hison's infringing activity. SMC and ASMC have spent millions, and in the case of SMC billions, of dollars to promote and manufacture high quality products under the SUZUKI Trademark. Should Hison be permitted to continue its conduct, both SMC and ASMC will suffer substantial losses and damage to their reputations and goodwill.

However, Hison will suffer no hardship in the event a preliminary injunction is issued, because Hison has no right to engage in infringing activities. Moreover, if enjoined, Hison may still sell personal watercraft and jet boats, but not by infringing Plaintiffs' trademark. Nothing prevents Hison from developing, marketing, and selling products with engines that do not use the SUZUKI Trademark. There will be little, if any, unjustifiable harm to Hison by entry of the proposed preliminary relief, as it may continue to market non-infringing products. The only thing that Hinson will be prevented from doing is from selling infringing products, "a loss which [it] may justifiably be called upon to bear." Corning Glass Works v. Jeannette Glass Co., 308 F. Supp. 1321, 1328 (S.D.N.Y. 1970).

Here, the balance of equities weighs in Plaintiffs' favor. For these reasons, substantial immediate and irreparable injury is likely to result without preliminary relief and the Plaintiffs have no adequate remedy at law.

### D. Public Interest Favors Preliminary Injunction

Fourth, this preliminary injunction will serve the interests of the public. Among other things, the public has an interest in upholding trademark laws and in preventing confusion in the marketplace. The Court finds that Hison has engaged in infringing activities and likely confused the consuming public into thinking that Hison's products are endorsed by or affiliated with SMC and ASMC.

"In trademark cases, 'the public as a whole has a paramount interest not to be confused by defendant's infringement'" and "[t]he Court must give considerable weight to this public interest." Nailtiques Cosmetic Corp. v. Salon Sciences, Corp., 1997 U.S. Dist. LEXIS 4662, at *14-*15 (S.D. Fla. 1997). The fulfilling of that interest by granting the preliminary relief requested here is warranted. In addition, there is a strong public interest in favor of protecting one's intellectual property pursuant to the trademark laws of the United States. As such, it is no disservice, and is in fact a service, to the public interest if the presently-requested temporary relief is granted. Furthermore, the Court is concerned that there is a possibility that Hison is using the engines in question in a manner for which they are not designed and use by consumers could run the risk of physical harm. See, e.g., Burger King Corp. v. Duckrey, 11-23748-CIV, 2011 WL 6937384 *6 (S.D. Fla. Dec. 22, 2011) (temporary restraining order issued against defendants because of their unauthorized continued use of the Burger King name and reputation.)

## CONCLUSION

Accordingly, after due consideration, it is **ORDERED AND ADJUDGED** that Plaintiff's Motion for a Preliminary Injunction is hereby **GRANTED** as follows:

1. Defendant Hison, its directors, officers, agents, servants, employees, successors, assigns, affiliates, joint venturers, and any and all other persons in active concert, in privity, or in participation with them from and all persons acting on their behalf or in concert with them having notice of this Order, are hereby **PRELIMINARILY ENJOINED** from:

   a. manufacturing, producing, sourcing, importing, selling, offering for sale, distributing, advertising, or promoting any goods and/or services that bear or that utilize the term "Suzuki" and/or any variation thereof;

   b. directly or indirectly infringing on the trademarks of Plaintiffs;

   c. representing or suggesting, expressly or implicitly, that Defendant and Plaintiffs have any relationship or have acted in cooperation with each other; and

   d. doing any other acts calculated or likely to cause confusion or mistake in the mind of the public or to lead the public into the belief that Defendant's services or products are authorized, sponsored, licensed, endorsed, promoted, or condoned by Plaintiffs or are otherwise affiliated with or connected to Plaintiffs.

   e. from secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by Plaintiffs, bearing the term "Suzuki", or any confusingly similar trademarks; or (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing the term "Suzuki", or any confusingly similar trademarks.

2. The terms of this Order shall take effect immediately. This Preliminary Injunction shall remain in effect until final judgment is issued in this action, or until such further dates as set by the Court or stipulated to by the parties.

CASE NO.: 1:12-cv-20626-SEITZ/SIMONTON

3. Despite 15 U.S.C. § 1116(d)(5)(D), Defendant has agreed that no bond is necessary.

**DONE and ORDERED** in Miami, Florida, this 27th day of February, 2012.

*[signature]*
PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

**CONSENTED TO BY:**

**MORRIS MANNING & MARTIN LLP**

By: /s/ Lawrence H. Kunin
  Lawrence H. Kunin (Fla. Bar No. 050210)
  lhk@mmmlaw.com
  1600 Atlanta Financial Center
  3343 Peachtree Road, N.E.
  Atlanta, Georgia 30326
  Telephone: (404) 233-7000
  Facsimile: (404) 365-9532

Of Counsel:

  John P. Fry (Georgia Bar No. 278705)
  jfry@mmmlaw.com
  1600 Atlanta Financial Center
  3343 Peachtree Road, N.E.
  Atlanta, Georgia 30326
  Telephone: (404) 233-7000
  Facsimile: (404) 365-9532

*Attorneys for Defendant, Jiujiang Hison Motor Boat Manufacturing Co., Ltd.*

CASE NO.: 1:12-cv-20626-SEITZ/SIMONTON

**ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.**

By: */s/ Edward M. Mullins*
    Edward M. Mullins (Fla. Bar No. 863920)
    emullins@astidavis.com
    Annette C. Escobar (Fla. Bar No. 369380)
    aescobar@astidavis.com
    701 Brickell Avenue, 16th Floor
    Miami, Florida  33131
    Telephone: (305) 372-8282
    Facsimile:  (305) 372-8202

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: */s/ Neil C. Jones*
    Steven G. Morrison*
    steve.morrison@nelsonmullins.com
    Mark C. Dukes*
    mark.dukes@nelsonmullins.com
    Nelson, Mullins, Riley & Scarborough, LLP
    1320 Main Street, 17th Floor
    Columbia, SC 29201
    Telephone: (803) 799-2000

    Neil C. Jones*
    neil.jones@nelsonmullins.com
    104 South Main Street / Ninth Floor
    Greenville, SC  29601
    Post Office Box 10084 (29603-0084)
    Telephone:  (864) 250-2260
    Facsimile:   (864) 250-2394

    *Admitted pro hac vice

Attorneys for Plaintiffs Suzuki Motor Corporation and American Suzuki Motor Corporation